IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**16MISC 0319**

In re Application of GEORGE W.
SCHLICH for Order to Take Discovery
Pursuant to 28 U.S.C. § 1782,

          Applicant.

Case No. _____

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* PETITION AND
APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT
DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Telephone: 212.906.1200
Facsimile: 212.751.4864

*Attorneys for Applicant George
W. Schlich*



RECEIVED
AUG 2 6 2016
U.S.D.C. S.D.N.Y.
CASHIERS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................1

BACKGROUND .............................................................................................5

    A.    INTELLIA ..............................................................................5

    B.    THE BROAD PATENTS .......................................................6

    C.    THE INTELLIA OPPOSITION PROCEEDINGS BEFORE THE EUROPEAN PATENT OFFICE.................................7

    D.    THE DISCOVERY SOUGHT HERE ...................................10

ARGUMENT.................................................................................................11

    A.    THE REQUESTED DISCOVERY SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782....................11

        1.    The Respondents are Found Within this District.......................11

        2.    The Discovery Sought is For Use in Proceedings in a Foreign Tribunal ....................12

        3.    Applicant is an Interested Party ..............13

        4.    The Discovery Sought is Not Privileged .................14

    B.    ALL OF THE DISCRETIONARY FACTORS OF SECTION 1782 WEIGH IN FAVOR OF PERMITTING THE DISCOVERY APPLICANT SEEKS ........................17

        1.    Respondents Are Not Participants in the Foreign Proceedings.......................18

        2.    The European Patent Office is Receptive to Discovery Pursuant to Section 1782 ...................18

        3.    The Petition is Not an Effort to Circumvent Foreign Proof-Gathering Restrictions .......................20

        4.    The Discovery is Neither Unduly Burdensome Nor Intrusive ..................20

CONCLUSION ..............................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Akebia Therapeutics, Inc. v. Fibrogen, Inc.,*
   793 F.3d 1108, 1111 (9th Cir. 2015) ...................................................................13, 19

*Amgen Inc. v. Hill,*
   No. 2:14-MC-00908-DN-EJF, 2015 WL 1401237 (D. Utah Mar. 25, 2015)..........................13

*In re Application of Chevron Corp.,*
   709 F. Supp. 2d 283 (S.D.N.Y. 2010) ...................................................................4, 14

*In re Application of Chevron Corp.,*
   749 F. Supp. 2d 135 (S.D.N.Y. 2010) .......................................................................17

*In re Application For an Order Permitting Metallgesellschaft AG,*
   121 F.3d 77 (2d Cir. 1997) .......................................................................................22

*In re Application of Gemeinshcaftspraxis Dr. Med Schottdorf,*
   2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) .............................................................20

*In re Application of OOO Promnefstroy,*
   No. M 19-99 (RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ...............................18, 19

*In re Bayer AG,*
   146 F.3d 188 (3d Cir. 1998) ................................................................4, 18, 20, 21

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.,*
   237 F.R.D. 618 (N.D. Cal. 2006).......................................................................15, 16

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
   673 F.3d 76 (2d Cir. 2012) ..............................................................................11, 17

*In re Chevron Corp.,*
   753 F. Supp. 2d 536 (D. Md. 2010).........................................................................18

*In re Edelman,*
   295 F.3d 171 (2d Cir. 2002) ...................................................................................12

*Euromepa, S.A. v. R. Esmerian, Inc.,*
   51 F.3d 1095 (2d Cir. 1995) ........................................................................18, 19, 22

*Fisher v. United States,*
   425 U.S. 391 (1976).................................................................................................15

*Fort James Corp. v. Solo Cup Co.,*
   412 F.3d 1340 (Fed. Cir. 2005) .................................................................16

*Genentech, Inc. v. ITC,*
   122 F.3d 1409 (Fed. Cir. 1997) .................................................................15

*In re Gianoli Aldunate,*
   3 F.3d 54 (2d Cir.), *cert. denied*, 510 U.S. 965 (1993)..............................11

*In re Godfrey,*
   526 F. Supp. 2d 417 (S.D.N.Y. 2007) ......................................................11

*In re Grand Jury Proceedings,*
   219 F.3d 175 (2d Cir. 2000) .....................................................................16

*Heraeus Kulzer, GmBH v. Biomet, Inc.,*
   633 F.3d 591 (7th Cir. 2011) ..............................................................17, 22

*Hoffman-LaRoche, Inc. v. Roxane Laboratories, Inc.,*
   C.A. No. 09-6335, 2011 WL 1792791 (May 11, 2011 D.N.J.)................15

*Intel Corp. v. Advanced Micro Devices, Inc.,*
   542 U.S. 241 (2004)..........................................................................*passim*

*Lancaster Factoring Co. Ltd. v. Mangone,*
   90 F.3d 38 (2d Cir. 1996) .........................................................................14

*Minatec Finance S.à.r.l. v. SI Grp. Inc.,*
   No. 1:08-cv-269-LEK, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) .............13, 20

*In re Republic of Kazakhkstan,*
   110 F. Supp. 3d 512, 515 (S.D.N.Y. 2015) .............................................12

*In re Roz Trading Ltd.,*
   No. 05-cv-02305-WSD, 2007 WL 120844 (N.D. Ga. Jan 11, 2007) ......18

*U.S. v. Mount Sinai Hospital,*
   -- F. Supp. 3d --, 2016 WL 2587393 (S.D.N.Y. May 4, 2016) ...............15

*Winbond Electronics Corp. v. ITC,*
   262 F.3d 1363(Fed. Cir. 2001) .................................................................15

## STATUTES

28 U.S.C. § 1782..............................................................................*passim*

## OTHER AUTHORITIES

S.Rep. No. 88–1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782 ........................11, 13

Applicant George W. Schlich ("Schlich" or "Applicant"), as an agent for Intellia Therapeutics, Inc. ("Intellia"), respectfully petitions this Court for an order, pursuant to 28 U.S.C. § 1782, authorizing discovery from The Rockefeller University ("Rockefeller"), Luciano Marraffini ("Marraffini"), Vedder Price P.C. ("Vedder") and Thomas Kowalski ("Kowalski") (collectively "Respondents") for use in pending opposition proceedings in the European Patent Office ("EPO").

## PRELIMINARY STATEMENT

This Petition relates to the underlying European patent rights for aspects of CRISPR/Cas9 technology, a biotechnology breakthrough described as "the Biggest Biotech Discovery of the Century." (*See* Ex. 8 at 1.)[1] In an EPO proceeding brought by Applicant, and separately eight other parties, to challenge patentability and seek revocation of certain CRISPR/Cas9 patents, Respondents Kowalski and Vedder have filed sworn declarations containing selective and incomplete information. Thus, Applicant seeks discovery, pursuant to Section 1782, so that it may provide the EPO with all the facts and complete the story before rendering its ruling.

The CRISPR/Cas9 system is a revolutionary biological tool permitting precise, targeted editing of genomic DNA. The system uses an enzyme called "Cas9," which functions as a molecular scissors, to cut DNA at a particular chosen sequence. The CRISPR/Cas9 system makes it possible to delete, repair, or insert genetic material at the "cut site." This system is quicker, more simple, less costly, and more precise than prior DNA editing technologies, opening up a broad range of possible applications. First and foremost, the technology has great promise to cure genetic diseases, such as hemophilia, muscular dystrophy, cystic fibrosis, and

---

[1] *See also* Ex. 9 at 20 (calling CRISPR/Cas 9 "the biggest game changer to hit biology" since 1985).

Huntington's disease.  Intellia is harnessing the potential of the CRISPR/Cas9 system to develop potentially curative therapeutic options for patients with severe and potentially life-threatening diseases by addressing the underlying cause of the disease.  It seeks to bring new treatments and potential cures to patients who currently have few options.

As part of its mission to help patients, Intellia licensed certain patent applications on the CRISPR/Cas9 technology invented by, *inter alia*, Intellia co-founder Dr. Jennifer Doudna ("Doudna Patent Applications").  The first of these patent applications was filed on May 25, 2012, on the eve of publication of a groundbreaking article by Doudna and her colleagues in the journal Science (Ex. 10).  On December 12, 2012, another group of applicants including Respondent Marrafini of Rockefeller and Feng Zhang of the Broad Institute ("Broad") filed the first in a series of patent applications also claiming CRISPR/Cas9 technology ("Broad Patent Applications").  Although filed nearly seven months after the Doudna Patent Applications, Broad has obtained several patents in Europe that claim priority to the Broad Patent Applications ("Broad Patents").

Intellia, through its European patent agent Schlich, has filed oppositions[2] to the first four Broad Patents issued by the EPO challenging their patentability and seeking revocation of the patents.  Among other things, Intellia and other opponents have argued that the Broad Patents are invalid because they do not list Respondent Marraffini or Respondent Rockefeller as an applicant, despite claiming priority of invention back to the December 12, 2012 patent application, on which Marraffini was a named inventor.  By failing to list Marraffini or

---

[2] An "opposition" is a procedure that allows any third party to challenge the validity of a patent in an inter partes, quasi-judicial proceeding before the EPO.

Rockefeller as an applicant, the Broad Patents are not entitled to the benefit of priority of the Broad Patent Applications.

In response to Intellia's arguments, Broad has argued that its priority claim is proper because a United States inventorship analysis should dictate which applicants have the right to claim priority. Specifically, Broad argues that the inventorship analysis of its United States attorney, Respondent Kowalski of the law firm Vedder, excuses its failure to include various inventors and applicants of priority applications. To support Broad's argument, Respondent Kowalski submitted declarations to the EPO on behalf of Broad. One declaration provides Kowalski's opinion on the inventorship of the Broad Patents and Applications, and references and relies upon documents from, and interviews with, the inventors (including Respondent Marraffini and two additional employees of Respondent Rockefeller, Dr. David Bikard, and Dr. Wenyan Jiang).[3] The underlying documents and interview materials, however, were not provided by Respondents or Broad to Applicant or the EPO. In other words, neither the Applicant nor the EPO have the full record; they only have the documents that Broad selectively wants them to see, and Kowalski's conclusions.

To ensure that the EPO has the complete set of facts and documents relevant to the issues raised in the opposition procedure, pursuant to Section 1782, Applicant makes a limited ask of this Court. Specifically, Applicant respectfully requests: (i) document discovery from Respondents related to the transfer of rights and inventorship issues discussed in Respondent Kowalski's declarations; (ii) deposition discovery to obtain testimony from Respondent

---

[3] Respondent Kowalski also submitted a declaration regarding the accuracy of certain assignment documents purporting to assign the rights of certain inventors of the Broad Applications to Broad. (Declaration of George Schlich ("Schlich Dec."), Ex. H.) The accuracy of these documents had been called into question by Applicant as they referenced patent applications that were not filed until after the date of the assignment. (*Id.*, Ex. E at ¶223.)

Kowalski on his inventorship study and transfer of rights by the inventors; and (iii) deposition discovery from Respondent Marraffini, one of those interviewed by Kowalski, and Rockefeller on the underlying inventorship and assignment issues. Such targeted discovery is necessary to prevent determination of the rights regarding a revolutionary biotechnology tool based on the selective and one-sided set of facts presented by Respondent to the EPO. *See In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 299 (S.D.N.Y. 2010) (Judge Kaplan granting Section 1782 discovery and stating "[s]unlight is said to be the best of disinfectants") (internal quotation marks omitted)).

Section 1782 authorizes "[t]he district court of the district in which a person resides or is found [to] order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal[.]" 28 U.S.C. § 1782(a). The discovery sought by this Petition not only satisfies all the statutory requirements for discovery, but also all four discretionary factors weigh in favor of ordering the requested disclosure. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004). *First*, as a party to the foreign proceedings, Applicant is an "interested person," and the discovery sought is not privileged. *Second*, Respondents are found within this District and are not parties to the European patent proceedings. *Third*, the EPO (for which the discovery is sought) is receptive to this type of evidence and the discovery is not otherwise available in the European oppositions themselves. *Finally*, the discovery sought here is not unduly burdensome because Applicant has narrowly focused its requests on information relevant to the foreign proceeding in question, and to information that itself was put at issue by Respondents Vedder and Kowalski in the foreign proceedings. Where, as here, the information sought is relevant, it is "presumptively discoverable" under Section 1782. *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998).

- 4 -

For the reasons that follow, Applicant respectfully requests this Court grant its Section 1782 Petition for document and deposition discovery from the Respondents.

## BACKGROUND

### A.   INTELLIA

Intellia is a leading genome editing company, focused on the development of proprietary, potentially curative therapeutics using a recently developed biological tool known as the CRISPR/Cas9 system. (*See* Ex. 11.)  Intellia was co-founded by Dr. Jennifer Doudna of the University of California, Berkeley, who, in collaboration with Dr. Emmanuelle Charpentier, led the team that developed the application of CRISPR/Cas9 and its use as a tool for genome engineering. (*See* Ex. 12.)  For this invention, Drs. Doudna and Charpentier have received numerous awards and recognitions, including the Breakthrough Prize in Life Sciences, Time Magazine's 100 most influential people in 2015, the Lurie Prize in Biomedical Sciences from the Foundation for the National Institutes of Health, the Heineken Prize from the Royal Netherlands Academy of Arts and Sciences, and the Gruber Prize in Genetics. (*See* Ex. 13.)

On May 25, 2012, Dr. Doudna and her co-workers filed U.S. Provisional Patent Application No. 61/652,086 describing the team's groundbreaking work. (*See* Ex. 14.)  This patent application has led to numerous United States and foreign patent applications concerning the CRISPR/Cas9 technology ("Doudna Patent Applications").  Recognizing the importance of the Doudna Patent Applications to its goal to cure diseases using CRISPR/Cas9, Intellia took a license to these patents. (*See* Ex. 12.)

The mission of Intellia is to develop potentially curative genome editing treatments that can positively transform the lives of people living with severe and life-threatening diseases. (Ex. 11.)  For example, through a collaboration with Novartis, Intellia's CRISPR platform is being used to engineer chimeric antigen receptor T-cells, which may have applications in the

treatment of cancer. (*See* Ex. 12.)  Additionally, Novartis and Intellia are using the CRISPR platform to edit hematopoietic stem cells, which has the potential to treat hereditary blood disorders like sickle cell anemia or hemophilia. (*Id.*)  Intellia is also collaborating with Regeneron to, for example, develop potential treatments for liver diseases. (*See* Ex. 15.)  Thus, Intellia is actively seeking to translate the promise of CRISPR/Cas9 into meaningful advances for patients.

**B.    THE BROAD PATENTS**

On December 12, 2012, nearly seven months after the first Doudna Patent Application was filed, Broad filed US Provisional Patent Application 61/736,527 ("'527 Provisional Application"). (*See* Schlich Dec., Ex. A.)  This was the first in a series of 21 priority patent applications and ten Patent Cooperation Treaty ("PCT") applications filed on December 13, 2013 relating to CRISPR/Cas9 technology. (*See id.*, Ex. F at Annex 1.)  There were initially four listed inventors for the '527 Provisional Application: Feng Zhang, Le Cong, Naomi Habib, and Respondent Luciano Marraffini. (*Id.*, Ex. A.)[4]  Drs. Zhang, Cong, and Habib were researchers at Broad (or its partner institutions).  Respondent Marraffini was a researcher at Respondent Rockefeller.

Stemming from the '527 Provisional Application, Broad filed dozens of patent applications in the United States and in Europe.  The European patent applications resulted in more than four issued European patents, including European Patent Nos. 2 771 468 B1 ("the '468 patent"), EP 2 784 162 B1  ("the '162 patent"), EP 2 764 103 B1  ("the '103 patent"), and

---

[4] On May 1, 2014, Broad filed a request with the U.S. Patent Office to correct the inventorship of the '527 Provisional Application, and add as inventors David Benjamin Turitz Cox, Patrick Hsu, Shuailiang Lin, and Fei Ran.  (Schlich Dec., Ex. D.)  Broad did not ask the Patent Office to remove Marraffini or Habib as inventors.  (*See id.*)

EP 2 896 697 B1  ("the '697 patent") (collectively the "Challenged Patents"). (*See* Schlich Dec.

at ¶4.)  Notably, despite claiming priority to the '527 Provisional Application on which

Respondent Marraffini is listed as an inventor and applicant, the Challenged Patents do *not* list

Marraffini or Rockefeller as an applicant. (*See id.* at ¶¶4, 9.)

## C.    THE INTELLIA OPPOSITION PROCEEDINGS BEFORE THE EUROPEAN PATENT OFFICE

Between October 26, 2015 and June 2, 2016, Applicant Schlich filed four oppositions

with the EPO seeking the revocation of the Challenged Patents ("Intellia Oppositions"):

| Patent Number | Patent Title | Listed Inventors | Date Opposition Filed |
|---|---|---|---|
| EP 2 771 468 B1 | Engineering of Systems, Methods and Optimized Guide Compositions for Sequence Manipulation | Feng Zhang Le Cong Patrick Hsu Fei Ran | October 26, 2015 |
| EP 2 784 162 B1 | Engineering of Systems, Methods and Optimized Guide Compositions for Sequence Manipulation | Le Cong Feng Zhang Patrick Hsu Fei Ran | January 8, 2016 |
| EP 2 764 103 B1 | CRISPR-CAS Systems and Methods for Altering Expression of Gene Products | Feng Zhang | May 12, 2016 |
| EP 2 896 697 B1 | Engineering of Systems, Methods and Optimized Guide Compositions for Sequence Manipulation | Feng Zhang Le Cong Patrick Hsu Fei Ran | June 2, 2016 |

(Schlich Dec. at ¶4.)  Applicant Schlich is a European Patent Attorney. (*Id.* at ¶1.)  As is

common practice in the EPO, Schlich filed the Intellia Oppositions in his name on behalf of his

client Intellia. (*See id.* at ¶¶4, 7.)  The Intellia Oppositions are inter partes procedures, meaning

both Applicant and the patent owners can submit argument and evidence to the EPO. (*See id.* at

¶3.)

The Intellia Oppositions seek revocation of the Challenged Patents on several grounds, including because the Challenged Patents fail to name as applicants individuals (including Respondent Marraffini) who are listed as inventors and applicants of the priority patent applications. (*See id.* at ¶12.)  Each of the Challenged Patents was also challenged by six to eight other parties, all of which also filed oppositions seeking revocation of one or more of the Challenged Patents on the grounds that the Broad had failed to name in the PCT applications all the applicants of the priority applications. (*See, e.g., id.* at ¶13; *id.*, Ex. E at ¶¶162-163.)

In response to the first Intellia Opposition[5], Broad filed a response on June 30, 2016, making arguments surrounding the inventorship and ownership of the alleged inventions in the Challenged Patent. (*Id.* at ¶14; *id.*, Ex. E.)  Broad also argued that although the original '527 Provisional Application listed Feng Zhang, Le Cong, Naomi Habib, and Respondent Luciano Marraffini, neither Dr. Habib nor Dr. Marraffini were in fact inventors of the Challenged Patent, and were properly omitted as applicants. (*Id.*)

To support its inventorship arguments, Broad submitted a declaration by its United States Patent Attorney, Respondent Kowalski of Respondent Vedder ("Kowalski Inventorship Declaration"). (Schlich Dec. at ¶14; *id.*, Ex. F.)  In the Kowalski Inventorship Declaration, Respondent describes an inventorship study he undertook to determine the inventorship of the Broad Patents, including the Challenged Patents. (*Id.*, Ex. F at ¶15.)  As part of the inventorship study, Kowalski interviewed individuals "working in Dr. Feng Zhang's laboratory at Broad, as well as Dr. Luciano Marraffini and individuals working at Dr. Marraffini's Laboratory of Bacteriology at Rockefeller University ('Rockefeller')." (*Id.*)  Kowalski also collected

---

[5] The deadline for the patent owner's response in the remaining Intellia Oppositions has not yet passed.

documents from the individuals he interviewed. (*Id.* at ¶18.)  Based on these interviews and documents, Kowalski provided his opinion as to the correct inventors of the Broad Patents (including the Challenged Patents). (*Id.* at ¶18 ("[C]onsidering the matters discussed and materials provided by the individuals interviewed and their explanations given during these interviews, I affirmatively state and confirm that the applicants and inventors are correctly identified on the PCT applications as set out in paragraph 17 above."); *id.* at ¶16 ("Based on this inventorship study, I concluded that Dr. Feng Zhang first conceived of CRISPR-Cas9 genome editing for use in mammalian cells, implemented the proof of concept study thereof while establishing his laboratories at MIT and The Broad Institute, and contributed in a not insubstantial manner to both general and specific aspects of claims of each of the PCT filings. . . .").)  Remarkably, neither Kowalski nor Broad provided the underlying documents or notes of the interviews referenced to Applicant or the EPO. (Schlich Dec. at ¶15.)

Respondent Kowalski also submitted a second declaration in support of Broad's arguments. (*Id.*, Ex. H ("Kowalski Assignment Declaration"), collectively with the Kowalski Inventorship Declaration ("Kowalski Declarations").)  Specifically, the Intellia Oppositions and two other opponents challenged the assignments from certain inventors of the Broad Applications to Broad, as they contained patent application numbers for patents that had yet to be filed as of the date the assignments were dated. (*See* Schlich Dec. at ¶16.)  The Kowalski Assignment Declaration explains how Respondent Vedder allegedly added the patent numbers into the assignments after they were signed. (*Id.*, Ex. H at ¶4.)

Pursuant to EPO opposition procedure, Applicant may respond to the Kowalski Declarations with argument and evidence, including documentary evidence, deposition testimony, or declarations. (*See* Schlich Dec. at ¶¶3, 19.)

- 9 -

### D.   THE DISCOVERY SOUGHT HERE

Applicant seeks discovery solely concerning the priority and ownership claims of the Challenged Patents, including the inventorship study and assignments put at issue in the Intellia Oppositions through the Kowalski Declarations.  No more.

Specifically, Applicant seeks document discovery from Respondent Kowalski and Respondent Vedder regarding (i) the inventorship study described and the conclusions regarding inventorship contained in the Kowalski Inventorship Declaration, and (ii) documents relating to the assignment of the patent applications discussed in the Kowalski Declarations. (*See* Exs. 1 and 2.) Applicant also seeks deposition discovery from Respondent Kowalski regarding the subject matter of the Kowalski Declarations. (*See* Ex. 3.)[6]

Furthermore, Applicant seeks document and deposition discovery from Respondents Marraffini[7] and Rockefeller regarding (i) the inventorship study described in the Kowalski Inventorship Declaration; (ii) Respondent Marraffini's and others' inventive contributions to the patent applications discussed in the Kowalski Inventorship Declaration; and (iii) documents relating to the assignment of the patent applications discussed in the Kowalski Declarations. (*See* Ex. 4-7.)

The requested discovery is highly relevant to Applicant's invalidity claims in the Intellia Oppositions and is narrowly tailored to avoid undue burden on Respondents.

---

[6] Applicant seeks a deposition of Respondent Kowalski in his personal capacity.  While not obligated to describe the matters for examination, Applicant has provided its intended topics for examination to show its intent to confine the deposition to narrow, relevant, and non-privileged topics.

[7] Applicant seeks a deposition of Respondent Marraffini in his personal capacity.  As with Respondent Kowalski, Applicant has provided its intended topics for examination to show good faith.

## ARGUMENT

### A.   THE REQUESTED DISCOVERY SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782

Section 1782 allows any party with an interest in a foreign proceeding to apply to a district court for discovery within the district.  In particular, Section 1782 states in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal.... The order may be made ... upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.... A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a).  The goal of the statute is to "provid[e] equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects."  S.Rep. No. 88–1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3783; *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (reversing district court's order quashing subpoenas granted pursuant to Section 1782).  In support of its goal, Section 1782 has, "over the years, been given 'increasingly broad applicability.'"  *Brandi-Dohrn*, 673 F.3d at 80 (quoting *In re Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir.), *cert. denied*, 510 U.S. 965 (1993)).

Thus, under the statute, a District Court may grant a petition for discovery pursuant to Section 1782 if it: (1) is directed at someone found within the District; (2) is intended for use before a foreign tribunal; (3) is based upon the application of a person interested in the foreign proceeding; and (4) does not seek privileged materials.  28 U.S.C. § 1782(a); *see also Intel*, 542 U.S. at 249.  The Petition meets these four statutory requirements.

#### 1.   The Respondents are Found Within this District

*First*, Respondents are "found" in this District.  28 U.S.C. § 1782(a).  A corporation is "found" in a district where it conducts "systematic and continuous" activities.  *See In re Godfrey*,

526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007); *see also In re Republic of Kazakhkstan*, 110 F. Supp. 3d 512, 515 (S.D.N.Y. 2015) (holding that law firm is found in S.D.N.Y. based on "systemic and continuous" presence from New York office). A person is "found" in a district where service of the subpoena can be made under Federal Rule of Civil Procedure 45. *See In re Edelman*, 295 F.3d 171, 177-80 (2d Cir. 2002).

According to its website, Respondent Vedder has an office in this district at 1633 Broadway, New York NY 10019. (*See* Ex. 16.) And Respondent Kowalski is a shareholder of Vedder located in that office. (*See* Ex. 17.) Moreover, Respondent Kowalski submitted the Kowalski Declarations under penalty of "New York State Law." (*See* Schlich Dec., Ex. F at ¶19; *id.*, Ex. H at ¶6.) Thus, Respondents Vedder and Kowalski are found in this District.

According to its website, Respondent Rockefeller is located in this district at 1230 York Avenue, New York NY 10065. (*See* Ex. 18.) And Respondent Marraffini maintains a laboratory at Rockefeller's location in this district. (*See* Ex. 19.) Furthermore, on the '527 Provisional Application, Marraffini's residence is listed as "New York, NY." (*See* Schlich Dec., Ex. A.) Thus, Respondents Rockefeller and Marraffini are also found in this District.

## 2. The Discovery Sought is For Use in Proceedings in a Foreign Tribunal

*Second,* the EPO is a foreign tribunal, and Intellia is seeking discovery for use in pending proceedings before such foreign tribunal. Congress purposely used the word "tribunal" in order to give the statute reach beyond foreign courts. The Senate Report states:

> The word 'tribunal' is used to make it clear that assistance is not confined to proceedings before conventional courts. . . . In view of the constant growth of administrative and quasi-judicial proceedings all over the world, the necessity for obtaining evidence in the United States may be as impelling before a foreign administrative tribunal or quasi-judicial agency as in proceedings before a conventional foreign court.

S.Rep. No. 88–1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3788; *see also* Intel, 542 U.S. at 249 (finding Commission of the European Communities qualified as a "tribunal" under Section 1782).

In *Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, the Ninth Circuit recently found that the EPO was a foreign tribunal under Section 1782. *See* 793 F.3d 1108, 1111 (9th Cir. 2015) (affirming a grant of discovery under Section 1782). Specifically, the Ninth Circuit found that opposition proceedings in front of the EPO "carry many of the hallmarks of traditional judicial proceedings: serving as first instance decision-makers tasked with resolving patent validity disputes, collecting and reviewing evidence in order to resolve those disputes, and permitting their decisions to be appealed and become subject to further review." *Id.* (internal citation omitted*); see also Amgen Inc. v. Hill*, No. 2:14-MC-00908-DN-EJF, 2015 WL 1401237, at \*4 (D. Utah Mar. 25, 2015) (adopting Report & Recommendation to grant discovery under Section 1782 for use in entitlement proceedings concerning the inventorship and ownership of three European patents); *Minatec Finance S.à.r.l. v. SI Grp. Inc.*, No. 1:08-cv-269-LEK, 2008 WL 3884374, at \*5 (N.D.N.Y. Aug. 18, 2008) ("Considering the comprehensive instruction from the Supreme Court in *Intel* on this very issue . . . . the law pronounces administrative agency's investigation, such as this tax audit, on equal footing with [a foreign] Court [of law]" for purposes of Section 1782.). Thus, the Intellia Oppositions pending before the EPO are proceedings in a foreign or international tribunal.

### 3.     Applicant is an Interested Party

*Third,* Applicant is an "interested party." In *Intel,* the Supreme Court unequivocally held that litigants in a foreign proceeding qualify as interested parties under the statutory requirement. *Intel*, 542 U.S. at 256 ("[A] complainant [in a foreign proceeding] 'possess[es] a reasonable interest in obtaining [judicial] assistance,' and therefore qualifies as an 'interested person' within

- 13 -

any fair construction of that term."). Indeed, the *Intel* court noted that a foreign litigant "may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Id.* (holding that a complainant who triggered a European Commission investigation satisfied the Section 1782 requirement for an "interested person"); *see also In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 291 (S.D.N.Y. 2010) ("Chevron is an 'interested person' because it is a party to" the foreign litigation).

Here, Applicant Schlich filed the Intellia Oppositions, is a party to those proceedings, and therefore qualifies as an interested party under Section 1782. That Schlich filed both the Intellia Oppositions and this Petition as an agent for Intellia does not impact his status as an interested party. *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 42-43 (2d Cir. 1996) (affirming district court's grant of 1782 petition filed by the agent of the debtor in the foreign bankruptcy proceedings). Furthermore, under case law governing the European opposition process, Schlich is the party or opponent in the Intellia Oppositions. (Schlich Dec. at ¶7.) Thus, Applicant is clearly an interested party.

### 4. The Discovery Sought is Not Privileged

*Finally,* the requested discovery is not privileged. With respect to Respondents Marraffini and Rockefeller, Applicant seeks discovery on the scientific work done by Marraffini and his team at Rockefeller in allegedly developing CRISPR/Cas9 technology and the assignment of any patent applications resulting from that work to third parties. This discovery is unquestionably not privileged.

Although Respondents Kowalski and Vedder are an attorney and law firm, respectively, the discovery sought is not protected by any "legally applicable privilege." 28 U.S.C. § 1782(a). First, Applicant is seeking in part non-privileged scientific documents underlying Kowalski's inventorship analysis and non-privileged assignment documents. These documents were created

not for the purpose of securing legal advice but to document the alleged inventors' scientific work or to assign rights in the patent applications; the fact they eventually ended up with attorney Kowalski does not make them privileged. *See, e.g., Fisher v. United States*, 425 U.S. 391, 403 (1976) (holding that the attorney-client privilege only protects "disclosures necessary to obtain informed legal advice *which might not have been made absent the privilege*") (emphasis added); *Hoffman-LaRoche, Inc. v. Roxane Laboratories, Inc.*, C.A. No. 09-6335, 2011 WL 1792791, at *8 (May 11, 2011 D.N.J.) ("Documents are not privileged simply because they end up with a lawyer or eventually prove useful to the lawyer's provision of legal services.").

Second, the Kowalski Inventorship Declaration notes that Kowalski was retained by Broad. (Schlich Dec., Ex. F at ¶11.)  Applicant seeks in part documents and testimony relating to the interviews with "Dr. Luciano Marraffini and individuals working in his Laboratory of Bacteriology at Rockefeller University" (*id.* at ¶15, 18).  There is no claim to privilege for this discovery.

Third, disclosure of confidential communications to a third party, such as an adversary in litigation, constitutes a waiver of privilege as to those matters. *See Genentech, Inc. v. ITC*, 122 F.3d 1409, 1415 (Fed. Cir. 1997); *U.S. v. Mount Sinai Hospital*, – F. Supp. 3d –, 2016 WL 2587393, at *3 (S.D.N.Y. May 4, 2016).  Courts have held that declarations regarding inventorship submitted to the United States Patent Office waive privilege. *See Winbond Electronics Corp. v. ITC*, 262 F.3d 1363, 1375-76(Fed. Cir. 2001) (finding patentee waived attorney-client privilege and work product protection by submitting a declaration by inventor to the Patent Office to correct inventorship); *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 625 (N.D. Cal. 2006) (finding patentee's

"submission of the declarations to correct inventorship on the original patent application to the PTO was a waiver of privilege").

Here, Respondents Kowalski and Vedder put at issue the inventorship study, the communications underlying it, and their opinions drawn from it in the Intellia Oppositions.[8] Thus, to the extent the documents and interviews underlying the inventorship study were ever privileged, that privilege has been waived for all communications relating to the inventorship study. *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) ("The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter."). "[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000); *see also Fort James*, 412 F.3d at 1349 (noting fairness dictates that "a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not"); *Bd. of Trustees of Leland Stanford Junior Univ.*, 237 F.R.D. at 625 (N.D. Cal. 2006) ("In sum, Stanford disclosed the contents of privileged attorney-client communications and work product protection to the PTO to successfully obtain ownership of the

---

[8] *See, e.g.*, Schlich Dec., Ex. F at ¶16 ("Based on this inventorship study, I concluded that Dr. Feng Zhang first conceived of CRISPR-Cas9 genome editing for use in mammalian cells, implemented the proof of concept study thereof while establishing his laboratories at MIT and The Broad Institute, and contributed in a not insubstantial manner to both general and specific aspects of claims of each of the PCT filings. . . .); *id* at ¶18 ("After having conducted the above inventorship study . . . and considering the matters discussed and materials provided by the individuals interviewed and their explanations given during those interviews, I affirmatively state and confirm that the applicants and inventors are correctly identified . . . .").

contested patents, and cannot now attempt to shield all other communications on the same subject matter, as this would unfairly prejudice Roche.").

Because Applicant has limited its discovery requests to the three non-privileged categories of discovery described above, the discovery sought is non-privileged. However, even assuming that any privilege could apply to potentially responsive discovery, the Federal Rules of Civil Procedure, which govern the process of discovery in Section 1782 applications, provide adequate protection. *See Heraeus Kulzer, GmBH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011); *see also In re Application of Chevron Corp.*, 749 F. Supp. 2d 135, 140 (S.D.N.Y. 2010) (denying motion to quash a subpoena issued pursuant to Section 1782 over privilege objections, finding respondent's "privilege claims, to whatever extent they have not been waived, are premature at best.").

## B.   ALL OF THE DISCRETIONARY FACTORS OF SECTION 1782 WEIGH IN FAVOR OF PERMITTING THE DISCOVERY APPLICANT SEEKS

Where, as here, the statutory requirements of Section 1782 have been met, the Supreme Court has directed District Courts to consider four additional factors before exercising their discretion to grant a Section 1782 application: (1) whether the person from whom discovery is sought is a party in the foreign proceedings; (2) the receptivity of the foreign tribunal to federal-court assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-65; *see also Brandi-Dohrn*, 673 F. 3d at 80-81. Although it is not necessary that all discretionary factors be met, as set forth below, each factor weighs in favor of granting the discovery requested here.

### 1.    Respondents Are Not Participants in the Foreign Proceedings

The primary objective of Section 1782 is "to assist foreign tribunals in obtaining relevant information that . . . they cannot obtain under their own laws." *Intel*, 542 U.S. at 262.  That is precisely why courts have held that Section 1782 discovery is particularly warranted when the person from whom discovery is sought is not a participant in the corresponding foreign proceeding.  *Id.* at 264; *see also In re Chevron Corp.*, 753 F. Supp. 2d 536, 539 (D. Md. 2010) (stating that where neither respondent was a party to the foreign proceeding "this factor is completely satisfied"); *In re Roz Trading Ltd.*, No. 05-cv-02305-WSD, 2007 WL 120844, at *2 (N.D. Ga. Jan 11, 2007) ("Respondent is not a party to the arbitration, and on this ground alone the first *Intel* factor is satisfied.").  In those circumstances, that person (and the relevant information in its possession), may fall beyond the reach of the foreign tribunal.

Because none of the Respondents – Rockefeller, Marraffini, Vedder, and Kowalski – are party to the Intellia Oppositions or subject to the EPO's jurisdiction, this factor weighs in favor of the requested discovery.

### 2.    The European Patent Office is Receptive to Discovery Pursuant to Section 1782

"Receptivity" is not a question of whether the foreign tribunal would or could permit the particular discovery; instead, it is an inquiry into whether a foreign legal system would "*reject* evidence obtained with the aid of section 1782." *In re Application of OOO Promnefstroy*, No. M 19-99 (RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009) (emphasis in original); *see also Bayer* 146 F.3d at 196; *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995) ("Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance.").  The Second Circuit has provided instructive guidance on this point:

> We think that it is unwise—as well as in tension with the aims of section 1782—for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law. Although "[a] grant of discovery that trenched upon the *clearly established* procedures of a foreign tribunal would not be within section 1782," we do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges. Such a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the "twin aims" of the statute.

*Euromepa*, 51 F.3d at 1099-100 (internal citation omitted) (emphasis in original); *see also Intel*, 542 U.S. at 265 (holding that a Section 1782 application could be granted despite the fact that the foreign tribunal hearing the underlying matters "stated in *amicus curiae* briefs to this Court that it does not need or want the District Court's assistance"). Thus, courts must look for "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa*, 51 F.3d at 1100; *see also OOO Promnefstroy*, 2009 WL 3335608, at *7.

There is no authoritative proof the EPO would reject discovery obtained under Section 1782. To the contrary, the rules governing European oppositions and past practice *confirm* the EPO would be receptive to the discovery sought herein. Indeed, the rules governing opposition proceedings at the EPO contain no restrictions with regards to the type of evidence that may be admitted and the EPO has allowed the submission of broad evidence in prior matters. (*See* Schlich Dec. at ¶¶18-19, 21-27.) Moreover, in *Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, the Ninth Circuit affirmed the District Court's grant of document and deposition discovery pursuant to Section 1782 for use in a European Opposition. *See* 793 F.3d at 1112-13. Opponent Akebia Therapeutics submitted evidence obtained pursuant to Section 1782 to the EPO, and the EPO not only accepted that evidence but relied on it in making its decision to revoke the patent in question. (*See* Schlich Dec. at ¶22-23; *id.*, Ex. I at Section 4.4-4.5.)

Here, because of the clear indications that the EPO is amenable to evidence gathered pursuant to Section 1782, the second discretionary factor also weighs in favor of the requested discovery.

### 3.     The Petition is Not an Effort to Circumvent Foreign Proof-Gathering Restrictions

The third discretionary *Intel* factor – whether the applicant is attempting to "circumvent foreign proof-gathering restrictions" – is meant to preclude bad faith misuse of the process. *See Minatec*, 2008 WL 3884374, at *8. This application is clearly a good faith effort to obtain evidence for the sole purpose of presenting the EPO with a complete picture, where the patentee has presented incomplete evidence. Furthermore, an applicant is not required to seek discovery of the materials from the foreign tribunal before filing a Section 1782 application and the information sought need not be discoverable there. *Intel*, 542 U.S. at 253 (holding that Section 1782 does not impose a "foreign-discoverability requirement"); *Bayer*, 146 F.3d at 196 ("Indeed, a 'quasi-exhaustion requirement' . . . has been rejected by those courts that have addressed it."). Accordingly, this factor also weighs in favor of the requested discovery.

### 4.     The Discovery is Neither Unduly Burdensome Nor Intrusive

The final discretionary *Intel* factor concerns whether the discovery sought is unduly burdensome or intrusive. In considering this factor, a court is to determine whether the discovery requests encompassed in the petition are "sufficiently tailored to the litigation issues for which production is sought." *In re Application of Gemeinshcaftspraxis Dr. Med Schottdorf*, 2006 WL 3844464, at *8 (S.D.N.Y. Dec. 29, 2006); *see also Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) ("[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."). Here, Applicant's discovery requests are not

unduly burdensome or intrusive.  To the contrary, they are narrowly tailored in scope and

substance to Applicant's evidentiary needs in the Intellia Oppositions.  They focus *only* on the

inventorship and ownership issues put at issue by Broad, including through the Kowalski

Declarations submitted by Respondents Kowalski and Vedder.  As such, the requested discovery

is necessary in order to present the European Patent Office with a complete and accurate picture.

*Bayer*, 146 F.3d at 196 (noting where the information sought is relevant it is "presumptively

discoverable" under Section 1782).

Specifically, with respect to Respondents Kowalski and Vedder, Applicant has narrowly

tailored its requests to (i) the inventorship study described and the conclusions regarding

inventorship contained in the Kowalski Inventorship Declaration, and (ii) the assignments of the

patents discussed in the Kowalski Declarations.  Thus, Applicant's requests seek *only* discovery

on topics put at issue by Kowalski in the Intellia Oppositions.  Furthermore, in the Kowalski

Inventorship Declaration prepared recently, Respondent Kowalski notes that he "consider[ed] the

matters discussed and materials provided by the individuals interviewed and their explanations

given during these interviews." (*See* Schlich Dec., Ex. F at ¶18.)  Thus, Respondents necessarily

gathered and reviewed much of the information sought by Applicant in order to give the opinion

submitted under oath in the Kowalski Inventorship Declaration.  Accordingly, having reviewed

such material, it is not an undue burden for Respondents to produce that material to Applicant.

With respect to Respondents Marraffini and Rockefeller, Applicant has narrowly tailored

its requests to discovery relating to (i) the inventorship study described in the Kowalski

Inventorship Declaration; (ii) Respondent Marraffini's and others inventive contributions to the

patent applications discussed in the Kowalski Inventorship Declaration; and (iii) documents

relating to the assignment of the patent applications discussed in the Kowalski Declarations.

Again, this discovery is highly relevant in light of the arguments by Broad and Kowalski in the Intellia Oppositions that Respondent Marraffini is not an inventor.[9]

Therefore, this factor weighs in favor of the requested discovery.[10]

## CONCLUSION

For the foregoing reasons, Applicant respectfully requests that this Court grant this Petition and issue the requested subpoenas for document and deposition discovery.

Dated:  August 26, 2016

LATHAM & WATKINS LLP

By _[signature]_____
Casey L. Dwyer
LATHAM & WATKINS LLP
555 Eleventh St., NW
Washington, D.C. 20004-1304
Telephone: .202.637.2200
Facsimile: +202.637.2201

Benjamin A. Naftalis
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Telephone: 212.906.1200
Facsimile: 212.751.4864

*Attorneys for Applicant*
*George W. Schlich*

---

[9] In separate proceedings, Rockefeller is also challenging Broad's claim that Marraffini is not an inventor and therefore it is expected that the documents Applicant is requesting are readily available to Respondents.  (*See, e.g.*, Ex. 20.)

[10] Although Applicant has made every effort to propound narrowly tailored discovery requests, if the Court deems any of the requests to be overly broad at the outset, Applicant respectfully requests that the requests be modified—or Applicant be given the opportunity to modify them. *In re Application For an Order Permitting Metallgesellschaft AG*, 121 F.3d 77, 80 (2d Cir. 1997) (quoting *Euromepa*, 51 F.3d at 1101); *see also Heraeus Kulzer*, 633 F.3d at 598 (finding that if the district court found the requested discovery too broad the "district court can and should cut down its request, but not to nothing, as it did. That was unreasonable, and therefore reversible.").

*Of Counsel:*

Michael A. Morin
David. P. Frazier
LATHAM & WATKINS LLP
555 Eleventh St., NW
Washington, D.C. 20004-1304
Telephone: 202.637.2200
Facsimile: 202.637.2201
*Pro hac vice motion to be filed*

Mary K. Ferguson
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
2 Seaport Lane
Boston MA 02210-2001
Telephone: 617.646.1600
Facsimile: 617.646.1666
*Pro hac vice motion to be filed*