```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
IN RE APPLICATION OF GEORGE W.                              :      16-MC-319 (VSB)
SCHLICH FOR ORDER TO TAKE                                   :
DISCOVERY PURSUANT TO 28 U.S.C.                             :      **MEMORANDUM & OPINION**
§ 1782                                                      :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/18/217

Appearances:

Michael A. Morin
David P. Frazier
Latham & Watkins LLP
Washington, DC

Benjamin A. Naftalis
Latham & Watkins LLP
New York, NY

*Counsel for Applicant George W. Schlich*

Gregory P. Joseph
Courtney Alyssa Solomon
Honey L. Kober
Joseph Hage Aaronson, LLC
New York, NY

*Counsel for Respondents Vedder Price P.C. and Thomas J. Kowalski*

Alejandro Hari Cruz
Gregory L. Diskant
Irena Royzman
Patterson, Belknap, Webb & Tyler LLP
New York, NY

Dorothy Ruolan Du
Sidley Austin LLP
New York, NY

*Counsel for Respondent The Rockefeller University*

Charles Davison Hoffmann
Hoffman Marshall Strong LLP
New York, NY

Gregory L. Diskant
Patterson, Belknap, Webb & Tyler LLP
New York, NY

*Counsel for Respondent Dr. Luciano Marraffini*

Charles K. Verhoeven
Matthew D. Robson
Melissa J. Baily
Raymond Neville Nimrod
Quinn Emanuel Urquhart & Sullivan, LLP
New York, NY

*Counsel for Intervenor The Broad Institute, Inc.*

VERNON S. BRODERICK, United States District Judge:

Petitioner George W. Schlich ("Petitioner" or "Schlich"), as an agent for Intellia Therapeutics, Inc. ("Intellia"), filed a petition for pursuant to 28 U.S.C. § 1782 for discovery from Respondents The Rockefeller University, Luciano Marraffini, Vedder Price P.C., and Thomas Kowalski (collectively, "Respondents") for use in pending opposition proceedings before the European Patent Office (the "EPO"). Petitioner has failed to establish that the discovery sought is "for use" in the foreign proceeding. Accordingly, for the reasons stated herein, the petition is DENIED.

## I. Background

This § 1782 application is just one part of an ongoing patent battle between two research groups for rights to a new biotechnology breakthrough, CRISPR/Cas9. (*See* Dwyer Decl. Exs. 8–10.)[1] Intellia is a genome-editing company co-founded by Dr. Jennifer Doudna of the University of California, Berkeley. (*Id.* Ex. 12.) On May 25, 2012, Dr. Doudna and her colleagues filed U.S. Provisional Patent Application No. 61/652,086, which led to a number of

---

[1] "Dwyer Decl." refers to the Declaration of Casey L. Dwyer in Support of Ex Parte Petition and Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings filed on August 26, 2016. (Doc. 4.)

United States and foreign patent applications relating to the biotechnology. (*Id.* Ex. 14.) Intellia licensed these patents. (*See id.* Ex. 12; Pet.'s Mem. 5.)[2] Schlich is Intellia's European patent agent and claims that Doudna and her colleagues are the rightful inventors of CRISPR/Cas9. (*See* Schlich Decl. ¶ 7.)

The Broad Institute, Inc. ("Broad") is a research institute in Cambridge, Massachusetts that works with partner institutions, including Rockefeller University. (*See* Broad's Mem. 5.)[3] On December 12, 2012, Broad filed US Provisional Patent Application 61/736,527 (the "527 Provisional Application"). (Schlich Decl. Ex. 1.) The 527 Provisional Application initially listed four inventors: Feng Zhang, Le Cong, Naomi Habib, and Luciano Marraffini. (*Id.*) Drs. Zhang, Cong, and Habib were researchers with Broad; Dr. Marraffini was with Rockefeller. (Pet.'s Mem. 6.) On May 1, 2014, Broad filed a request to correct the inventorship of the 527 Provisional Application, adding David Benjamin Turitz Cox, Patrick Hsu, Shuailiang Lin, and Fei Ran. (Schlich Decl. Ex. D.)

Provisional patent applications are essentially meant to secure an applicant's filing date. Applicants then have a certain amount of time to submit finalized US patent applications and Patent Cooperation Treaty ("PCT") applications. (*See* Hr'g Tr. 14:10–15:2; Schlich Decl. ¶ 12.)[4] After filing the 527 Provisional Application, Broad filed a series of US Priority Patent Applications and PCT applications, claiming rights to aspects of the CRISPR/Cas9 technology. (Pet.'s Mem. 6.) The PCT patent applications resulted in the issuance of a number of European

---

[2] "Pet.'s Mem." refers to the Memorandum of Law in Support of Ex Parte Petition and Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. (Doc. 2.)

[3] "Broad's Mem." refers to the Memorandum of Law in Opposition to Petition for Discovery Pursuant to 28 U.S.C. § 1782 from George W. Schlich. (Doc. 35-1.)

[4] "Hr'g Tr." refers to the transcript of the oral argument held before me on January 17, 2017. (*See* Dkt. Entry Jan. 17, 2017.)

3

patents, including European Patent Nos. 2 771 468 B1, EP 2 784 162 B1, EP 2 764 103 B1, and EP 2 896 697 (the "European Patents"). (*See* Schlich Decl. ¶ 4.)[5]

Intellia's European patent agent, George Schlich, filed four oppositions with the EPO seeking revocations of the European Patents. (*Id.*) Although Schlich filed the oppositions in his name, he did so as an agent of Intellia, and Intellia owns and controls the oppositions. (*Id.* ¶ 7.) "Filing in the attorney's name is common practice in oppositions in front of the European Patent Office." (*Id.*)

The EPO is an administrative body that derives its powers from the European Patent Convention ("EPC"), an international treaty under which national patents for EPC signatories may be granted "through a single examination procedure at the European Patent Office." (Roberts Decl. ¶¶ 6, 11.)[6] "A 'European patent' refers to this single application by which a successful applicant obtains patents in identical terms in each of the EPC [signatories] (or the subset of those states which he designates)." (*Id*. ¶ 6.)

Anyone can oppose the grant of an EPO patent. (*Id.*) Once a notice of opposition is filed, the opposition is assigned to a three-member panel, which reviews the submissions, hears oral argument if requested, and then issues a final decision. (*Id.* ¶ 7.) A party seeking opposition must put forward his entire case (arguments and evidence) at the time of filing the opposition. (*Id.* ¶ 9.)

The EPO is inquisitorial in nature: "in proceedings before it, the EPO shall examine the facts of its own motion; it shall not be restricted in this examination to the facts, evidence and

---

[5] "Schlich Decl." refers to the Declaration of George W. Schlich in Support of Ex Parte Petition and Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings filed on August 25, 2016. (Doc. 3.)

[6] "Roberts Decl." refers to the Declaration of Gwilym Roberts in Respect of George W. Schlich's Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings filed on October 4, 2016. (Doc. 41.)

4

arguments provided by the parties and the relief sought." (*Id.* ¶ 13 (quoting EPC Art. 114(1)).) However, "the EPO has no power of enforcement or compulsion," and to the extent the EPO needs enforcement powers, it must make a request for assistance to national courts of contracting states of the EPC. (Roberts Decl. ¶ 14.) When the EPO does take evidence, its purview is broad. The available means of "giving or obtaining evidence" are listed as: "(a) hearing the parties; (b) requests for information; (c) production of documents; (d) hearing witnesses; (e) opinions by experts; (f) inspection; (g) sworn statements in writing." (*Id.* ¶ 22 (quoting EPC Article 117(1)).) The EPO may exercise these powers either on its own volition or at the request of a party. (Roberts Decl. ¶¶ 21–23.) "[S]hould a party desire to obtain evidence from another party or witness, the party specifies to the EPO what evidence they seek and the EPO then decides whether to pass on the request to the relevant party/witness. The Opposition Division expects specific detail of the evidence requested to countenance passing on the request, for example, what the party seeks to demonstrate, in what form (witness, document, etc.) and why it is relevant." (*Id.* ¶ 23.) The EPO does not have process for protecting confidentiality of submitted information. (*Id.* ¶¶ 34–35.) Once the EPO has gathered evidence it has requested or that has been provided by the parties, it evaluates the evidence and disregards evidence it deems irrelevant. (*Id.* ¶ 21.) This evaluation "typically" happens toward the end of opposition proceedings. (*Id.*)

In his Declaration, Schlich described the relevant challenge to the European Patents as follows:

> [T]he Intellia Oppositions seek revocation of the Challenged Patents on the ground that the patents are not entitled to the benefit of priority of at least certain priority applications because they do not list Naomi Habib, Luciano Marraffini, Shuailiang Lin, or David Cox as applicants, despite claiming priority of invention back to the [provisional patent applications]. A consequence of being not entitled to this priority claim is that the patents

5

> must be revoked because additional prior art is available that prejudices the validity of the patents. In addition, Intellia seeks revocation of certain of the Challenged Patents because they are not entitled to their priority claim with respect to the contributions of Luciano Marraffini, David Bikard, Wenyan Jiang, Le Cong, Patrick Hsu, Fei Ran, Naomi Habib, David Cox, and/or Shuailiang Lin. As such, the Challenged Patents are not entitled to claim priority to at least the [provisional patent applications], and all features of the claimed DNA editing tools were published before the Challenged Patents were filed.

(Schlich Decl. ¶ 12.) In other words, Intellia opposed the validity of the Challenged Patents because the inventors named on the PCT applications did not include some inventors named in the provisional US patent applications. Therefore, it argued, Broad's PCT applications could not claim the right of priority to the provisional application filing dates.

In response to Schlich's priority argument, Broad argued that "the priority question" turns on United States patent law. (*Id.* ¶ 14.) According to Broad, under United States patent law, there need not be unity between the inventors on the provisional application and the inventors on the final application.[7] (*See id.* Ex. E, ¶ 165.) Schlich asserts that if the law requires unity of inventors, as required by European law, then Schlich prevails.[8] (*See* Hr'g Tr. 12:3–9.)

In its response, Broad referenced an "inventorship investigation" conducted by its United States patent lawyer, Thomas Kowalski, which was completed prior to the filing of the PCT applications to ensure that the inventors were properly named in the PCT applications. (Schlich

---

[7] A United States patent application must identify the names of the individual inventors and include an oath or declaration by each one that contains a statement that the inventor believes himself or herself to be the original inventor or an original joint inventor of a claimed invention in the application. There is no requirement that the inventors include all those who were named in the provisional application. 35 U.S.C. §§ 111, 115. Indeed, correcting inventorship on the final patent application does not jeopardize the right to claim priority to the original provisional application filing date. *Id.* § 256 ("[T]he error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section.").

[8] The relevant underlying issue is whether United States law or European law is applied to interpret the terms contained in Article 87(1) of the European Patent Convention ("EPC"), which states: "any person who has duly filed . . . an application for a patent . . . or his successor in title, shall enjoy, for the purpose of filing a European patent application in respect of the same invention, a right of priority during a period of twelve months from the date of filing of the first application." (Schlich Decl. Ex. E, ¶ 173; *see also id.* ¶¶ 165, 176, 181, 182.)

6

Decl. Ex. F, ¶¶ 13, 15–17.)  In support of its argument, Broad submitted two declarations by Kowalski (the "Kowalski Declarations"), which primarily describe the process that Kowalski undertook to determine the inventorship of the European Patents.  (*Id.* Exs. F; H.)  Broad's response and the Kowalski Declarations reference and rely on a number of documents and interviews with inventors.  (*Id.*)  This § 1782 application seeks discovery related to the facts and documents underlying the Kowalski Declarations.  Specifically, Petitioner seeks "(i) document discovery from Respondents related to the transfer of rights and inventorship issues discussed in Respondent Kowalski's [D]eclarations; (ii) deposition discovery to obtain testimony from Respondent Kowalski on his inventorship study and transfer of rights by the inventors; and (iii) deposition discovery from Respondent Marraffini, one of those interviewed by Kowalski, and Rockefeller on the underlying inventorship and assignment issues."  (Pet.'s Mem. 3–4.)[9]

## II. Procedural History

Petitioner initially filed his § 1782 application ex parte on August 26, 2016.  (Doc. 1.)  Judge Valerie Caproni, the judge assigned to Part I at the time, directed Petitioner to serve a copy of its petition on Respondents and directed Respondents to file a letter in response showing cause why the Court should not grant the application and permit discovery.  (Doc. 5.)  Respondents subsequently appeared and opposed the petition.  (Docs. 32–33; 42–44; 46–47.)  Broad intervened in this matter by an unopposed motion, which was granted on October 11, 2016 by Judge Richard Sullivan, who was assigned to Part I at the time.  (Docs. 34–41; 53.)

On November 17, 2016, Broad requested a stay of the proceedings pending the disposition of a substantially similar § 1782 application filed in the District of Massachusetts before Judge Dennis Saylor.  (Doc. 61.)  Chief Judge Loretta Preska, the judge on Part I duty at

---

[9] The specific requests are contained in Exhibits 1 through 7 of the Dwyer Declaration.

the time, granted Broad's request to stay proceedings over Petitioner's objection. (Doc. 63.)

On December 9, 2016, Judge Saylor issued his decision, denying the application for discovery without prejudice. (Doc. 64-1.) Thereafter, the stay in this matter was lifted and a hearing was held on January 17, 2017 before me, as the judge on Part I duty at the time. (Docs. 69–71.) During the argument, I directed the parties to submit supplemental briefing on the question of whether the statutory "for use" factor had been met, which was not addressed in the initial briefing. I also indicated that I would keep the matter rather than have it reviewed by the Part I judge on duty when the supplemental briefing was completed. I received supplemental letter briefs from the parties, (Docs. 75–79), as well as a notice of supplemental authority informing me that Judge Saylor denied reconsideration of his prior ruling, (Doc. 80).

On April 13, 2017, while this decision was pending, the EPO issued a summons to attend oral proceedings, which included its Preliminary Non-Binding Findings. (Doc. 81-1.) In its Preliminary Non-Binding Findings, the EPO preliminarily rejected Broad's priority arguments, but made the following observations about Petitioner's attempt to seek discovery in the United States:

> An assessment of whether the inventor/applicant Maraffini or his successor in title, The Rockefeller University, were entitled to be named as applicants in the PCT application, as maintained by [Patentee], would be equal to assessing entitlement to the EP application under Article 60(3) and 61 EPC, for which the EPO is clearly not competent.
>
> This is confirmed also by the recent submissions filed by the [Patentee] on [October 31, 2016] as well as by O9 on [November 18, 2016] and by O4 on [December 23, 2016] regarding the discovery proceedings initiated by O1 in the US according to 28 U.S. code § 1782. As underlined by the P such proceedings are based on issues of entitlement in so far as they attempt to put into question the inventorship as allocated by the distribution of the contribution by Mr Kowalski (cf. also the expert opinion of Dr. Kinkeldey filed as D164).

(*Id.* ¶¶ 72–73.) Broad wrote to inform me of the EPO's issuance of the summons to attend oral

proceedings on April 26, 2017, (Doc. 81), and on May 1, 2017, Petitioner submitted a response to Broad's letter, (Doc. 82).

### III. Applicable Law

Section 1782 provides as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782. Thus, the statutory requirements are: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

Once the statutory requirements are met, "a district court is free to grant discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83–84 (2d Cir. 2004) (quoting *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 78 (2d Cir. 1997)). This discretion is "not boundless," and must be exercised "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz*, 376 F.3d at 84 (quoting *In re Metallgesellschaft*, 121 F.3d at 79). The Supreme Court has identified the following four discretionary factors to aid district courts in determining whether to grant § 1782 applications:

9

"(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)). While "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright," *Mees*, 793 F.3d at 302 (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995)), a court may "'deny rather than merely limit discovery' sought under § 1782 where a narrowly tailored discovery order is not possible," *In re Application of Elvis Presley Enterprises LLC for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, No. 15 mc 386 (DLC), 2016 WL 843380, at *6 (S.D.N.Y. Mar. 1, 2016) (quoting *Schmitz*, 376 F.3d at 85) (declining to undertake an independent review of the request to target particularly relevant documents whose production would not impose undue burden "given the posture of the German proceedings, the timing of the § 1782 application, the breadth of [the] requests, and [applicant's] limited efforts to narrow its requests").

The Second Circuit has recently addressed the second statutory requirement of § 1782—"that the discovery sought is for use in a proceeding before foreign tribunal." *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 118 (2d Cir. 2015) (internal quotation marks omitted). A § 1782 applicant must demonstrate "that the evidence sought is

10

'something that will be employed with some advantage or serve some use in the proceeding.'" *Id.* at 20 (quoting *Mees*, 793 F.3d at 297). "Put differently, discovery is 'for use' in a foreign proceeding if it is relevant to the subject matter of the proceeding, and the evidence would 'increase the applicant's chances of success' in the proceeding." *In re Asia Maritime Pacific Ltd.*, No. 15-CV-2760 (VEC), 2015 WL 5037129, at *3 (S.D.N.Y. Aug. 26, 2015) (quoting *Mees*, 793 F.3d at 291); *see also Mees*, 793 F.3d at 299–301 (holding that discovery sought to "plead *and to prove* [one's] claim" in a foreign proceeding satisfies "for use" requirement (emphasis in original)). "A 'proceeding' means the entire proceeding, not merely its initial stage," and a § 1782 application may be appropriate even when the foreign proceeding has not yet begun. *Mees*, 793 F.3d at 299.

An applicant may also establish the "for use" requirement by showing that the requested discovery can be submitted and "rel[ied] on" by the foreign tribunal. *Certain Funds*, 798 F.3d at 118 (quoting *Intel*, 542 U.S. at 257–58). But "it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding." *Certain Funds*, 798 F.3d at 120 n.7. However, the information need not be necessary for the applicant to prevail in the foreign proceeding. *See Mees*, 793 F.3d at 298 ("The plain meaning of the phrase 'for use in a proceeding' [is] not necessarily something without which the applicant could not prevail.").

Although district courts should not to delve into foreign evidentiary rules or demand a showing as to admissibility, the applicant should be expected to show that there is some "discernible procedural mechanism" by which the material sought can be used in the foreign proceeding. *Certain Funds*, 798 F.3d at 124 n.11. Such a showing "reflects the burden on a § 1782 applicant to establish that it will have some means of actually using the evidence in the

foreign proceeding" and "is a separate question from whether the discovered material will be admissible in the foreign proceeding." *Id.* (emphasis omitted). In *Certain Funds*, because the applicant "failed to show any way that they could put before the foreign tribunals the information they sought to discover, the district court correctly concluded that the information was not 'for use' in a foreign proceeding." *Id.* at 122.

Even if the "for use" requirement is satisfied, if the discovery request "appears only marginally relevant to the foreign proceeding," it "may in certain cases suggest that the application 'is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials,' which would be grounds for a discretionary denial of discovery." *Mees*, 793 F.3d at 299 n.10 (quoting *Euromepa*, 51 F.3d at 1101 n.6).

### IV. **Application**

Petitioner challenged the European Patents on the ground that the European Patents are not entitled to claim priority to the provisional filing dates because the inventors identified on the provisional application and the patent application are not identical. His argument before the EPO is that European law should apply, which requires unity of inventors. Broad's position before the EPO is that United States law should apply, which does not require unity of inventors. In short, as framed by the respective arguments of the parties, it does not matter whether Kowalski named the correct inventors or whether he used the right procedure in making the inventorship determination, as the primary issue is whether United States law or European law applies to the question of whether the same inventors need to be listed on both applications to claim the priority application date.

Because the question before the EPO is whether United States law or European law applies, the material sought is plainly irrelevant to the foreign proceeding and not "for use" in a

foreign proceeding within the meaning of § 1782. *See Certain Funds*, 798 F.3d at 120 n.7. Moreover, as the EPO recently made clear in its preliminary findings, it is "clearly not competent" to examine issues of entitlement, and is of the opinion that the United States proceedings "are based on issues of entitlement in so far as they attempt to put into question the inventorship as allocated by the distribution of the contribution by Mr Kowalski." (Doc. 81-1, ¶¶ 72–73; *see also* Doc. 61-4, ¶¶ 9–10.) These preliminary findings, though non-binding, indicate that the EPO lacks jurisdiction to examine issues of entitlement, thus calling into question Petitioner's ability to demonstrate that it "will have some means of actually using the evidence in the foreign proceeding." *See Certain Funds*, 798 F.3d at 120, 124 n.11.

In its post-argument letter brief, Petitioner claims that the information sought is "for use" in the EPO proceedings in two respects. First, Petitioner argues it is "relevant to the determination of whether European or US law should apply" because "[i]f the inventorship analysis is not 'clear-cut,' it would undermine Broad's position that US [law] should apply." (Pet.'s Ltr. Br. 4.)[10] I take this to mean that Petitioner believes the EPO's choice-of-law determination to be more than a purely legal question; rather, that it would rest to some extent on the reliability of the inventorship study. However, Petitioner provides no explanation for why the merits of the inventorship study would be relevant to the EPO's choice-of-law determination, and I can discern none from the record.

Second, Petitioner argues that if the inventorship analysis is flawed, "then [Respondent's] core argument in favour of priority would apparently crumble." (*Id.*) In other words, "if Respondent Marraffini (or others) made inventive contributions to the subsequently filed patent applications, and did not transfer those rights to the named applicants prior to those applications

---

[10] "Pet.'s Ltr. Br." refers to the letter submitted by Michael Morin dated January 31, 2017. (Doc. 75.)

13

being filed, Broad's priority argument fails" because, "under European law there is no mechanism to go back and fix this situation for the opposed patents." (*Id.*)  However, the material sought—namely, documents related to the inventorship issues discussed in the Kowalski Declarations—does not speak to the viability of Broad's priority argument under European law. Instead, the material sought underlies the results of Kowalski's inventorship study—a study undertaken to support Broad's priority argument under United States law, not European law. Therefore, additional materials would be irrelevant, and Petitioner would be unable to "employ [these materials] 'with some advantage.'"  *See Certain Funds*, 798 F.3d at 120 (quoting *Mees*, 793 F.3d at 297).

Petitioner also says that it seeks the information to "call[] into question the reliability of Mr. Kowalski's declaration." (Pet.'s Ltr. Br. 3, 5.)  This argument is unconvincing given the fact that Kowalski's declaration was principally legal in nature—arguing that United States law should apply to the question of whether unity of inventorship destroys priority—and therefore his credibility would not seem to be at issue.  However, to the extent the information goes to Kowalski's reliability, I find such relevance minimal.  Therefore, to the extent Petitioner could use the material only to discredit Kowalski, I would find such material only "marginally relevant" such that it seeks "unreasonably cumulative or irrelevant materials" and thus find grounds for discretionary denial.  *See Mees*, 793 F.3d at 299 n.10 (quoting *Euromepa*, 51 F.3d at 1101 n.6).

This case is different from *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108 (9th Cir. 2015), where the Ninth Circuit affirmed a district court's grant of a § 1782 application where the materials sought related to EPO opposition proceedings.  In that case, the petitioner sought revocation of the European patent on substantive grounds, and there was no question that

the materials sought were relevant to the EPO proceedings. *See Akebia Therapeutics*, 793 F.3d at 1109–10.

While I take heed of the Second Circuit's warning not to delve into the intricacies of foreign law and the foreign tribunal's evidentiary rules, Petitioner has not identified any way that it can employ the material sought before the EPO, given the limited choice-of-law question before it. This is not a "speculative foray[] into legal territories unfamiliar to federal judges." *Euromepa*, 51 F.3d at 1099. Thus, because Petitioner has not established that it is "in a position to use the evidence [it] seek[s] through [its] § 1782 application in [these] ongoing foreign proceedings," the petition must be denied. *See Certain Funds*, 798 F.3d at 120. Because I deny the petition on statutory grounds, I need not reach Respondents' remaining arguments.

## V. Conclusion

For the foregoing reasons, Petitioner's application is DENIED.

SO ORDERED.

Dated: September 18, 2017
      New York, New York

Vernon S. Broderick
United States District Judge